[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION #196, MOTION TO MODIFY CUSTODY andMOTION #186 (seeking to relocate the minor children)
The Plaintiff, Theresa Boustead, has filed two motions with this court, seeking (1) that the minor children be allowed to relocate with her to the State of Florida, and, (2) that the joint legal custody order be modified to award her sole custody of the minor children. For the reasons stated hereinafter both of these motions are denied.
There are two minor children issue of the marriage between Theresa Boustead and Terry Boustead: Laura now 11 years old and Christopher now 9 years old. These parents were divorced on January 7, 1993. The pendente lite proceedings between the parties were not uneventful. In December, 1989, the action for a dissolution of marriage was commenced by Ms. Boustead. The return date was January 30, 1990. On February 23, 1990 after a contested hearing, a pendente lite order was entered which provided for joint legal custody, the children residing with their mother and "liberal rights of visitation" for Mr. Boustead with a specific schedule which provided for overnight visitation (#101). On March 16, 1990, the plaintiff filed a Motion To Modify Temporary Visitation (#108) seeking to terminate Mr. Boustead's pendente lite visitation (or, in the alternate, overnight visitation) with the children. On March 19, 1990 the parties, by agreement, agreed to submit to lie detector tests and "go see" a psychologist (#106). By this time counsel for the minor children was active in the case. On May 18, 1990, the defendant filed a Motion For Joint Custody (#113); the defendant filed an objection thereto, stating "it is not in the best interest of the minor children who are now undergoing evaluation for suspected sexual abuse by the defendant father." (#115). A Motion For Contempt was also filed at about that time (#111) by the defendant claiming that the plaintiff was CT Page 5115-A refusing to allow him to visit with his children. The Objection (#114) to that Motion For Contempt restated the allegations of abuse and alleged that the denial of visitation was by agreement.
On July 16, 1990 by agreement of the parties, an order of supervised visitation supplanted the original pendente lite visitation orders (#111). On July 30, 1990 that order was continued by agreement. At that time, the agreed orders reflect that the children were in therapy and an evaluation was being undertaken by Yale-New Haven Hospital.
On September 20, 1990, the defendant filed a further motion seeking visitation with the minor children (#118). On November 2, 1990, an evaluation by Dr. Robson of the Institute of Living was noted and a court order was entered for the defendant to have certain specified supervised visitation, with a Miss Hannon as the specified supervisor. (Order entered on #119).
On January 28, 1991, counsel for the minor children moved that a prior pendente lite restriction on visitation at the father's residence be removed, while supervision remained in effect. It was granted by the court on March 28, 1991 (#121).
On July 1, 1991 the plaintiff filed a Motion to refer the matters of custody and visitation to Family Relations for study. It was granted on July 16, 1991 (#124).
On July 15, 1991 counsel for the minor children filed a motion to modify visitation, asking the court to "implement immediately the visitation order of Dr. Kenneth Robson." On August 16, 1991 that motion was granted and an order entered specifying certain unsupervised visitation by Mr. Boustead with his children, including overnights (#125).
On April 2 1992, notice that the Family Relations report was complete was filed with the court. On May 27, 1992 in reference to a motion to clarify, the court clarified that as of the February 24, 1990 proceeding it was ordered that the plaintiff have temporary custody of the minor children (#141).
On January 7, 1993, after an uncontested hearing, a judgment of dissolution of marriage was entered in this matter (#152). That judgment incorporated by reference a written "Dissolution Agreement" signed by both plaintiff and defendant. It provided in salient part: CT Page 5115-B
"The wife shall have custody of the minor children. The wife and husband agree the husband shall have the right to reasonable, flexible and liberal visitation with the minor children. The Husband's visitation shall be as follows, to wit:
a) Wednesdays: 4:30 p. m. to 7:00 p. m.
 b) Every other weekend from 10:00 a.m. Saturday to 6:00 p. m. Sunday;" . . . . . . [holiday and vacation provisions] . . . . . .
 In the event of an emergency or the inability to fulfill a visitation, either spouse shall notify the other spouse not less than twenty-four (24) hours prior to the scheduled visitation of said emergency.
 The parties will confer with each other on all important matters pertaining to the children's health, education, welfare, upbringing and religious training, with a view toward arriving at a harmonious policy calculated to promote the best interests of the children. The father shall have the right to participate in all major decisions concerning the children, including the choice of college; the mother shall have the right to make routine day-to-day decisions concerning the children. . . . . . . [illness notice provision] . . . . . .
 Although the mother shall have physical custody of the minor children, the father shall have the right to obtain all records concerning the minor children, including School and medical records and shall have the right to consult with all medical, counseling and School personnel . . . . . . [support provisions] . . . . . .
 Each party agrees to take all measures possible to foster a feeling of affection between the minor children and the other party and neither will do anything which may estrange the parties from the minor children."
On April 29, 1993 the defendant filed a Motion for Temporary Ex-Parte Order For Custody And For Modification of Custody, Motion To Suspend Order of The Court, and Motion To Reopen and Modify Judgement (##155, 156, and 157). The substance of these motions essentially alleged that the plaintiff had left the jurisdiction with the children, without the knowledge of the defendant and their whereabouts were unknown. The court granted CT Page 5115-C the ex parte custody order on April 29, 1993, as follows: "Temporary custody of the two children is awarded to the father. The children shall be returned to the State of Connecticut forthwith. At the time the children are returned to the State of Connecticut, physical custody of the children shall be with the mother. Furthermore, the children are not to be removed from the State of Connecticut until further order of the court. The order of child support is suspended for the time period the children are out of the State of Connecticut. The father is entitled to the School records of the children. The father is also entitled to have knowledge of any request or communication received by the children's School relating to the children." (#155).
On September 14, 1993, the defendant filed Motion to Modify Physical Custody And Visitation. That motion alleged that the children had been found in Florida and returned to Connecticut on September 2, 1993. On September 7, 1993, the plaintiff filed a Motion To Modify, seeking sole legal custody of the children, and ". . . that my children and I be allowed to immediately return to our home in Florida, so that they may continue their schooling, counseling and stability of life. I am willing to return to argue for the termination of Terry Boustead's parental rights, or any other matters that come up. " (#159). On September 7, 1993 the maker was once again referred to Family Relations (#160). Further, after hearing, the court ordered the children are to remain in Connecticut until further orders; custody was ordered in an individual named Carol Pleines and both of the children were given specific rights of visitation.
The court subsequently issued further orders of joint legal custody, primary residence of the children with their mother and reasonable rights of the visitation in the father, specifically ever weekend (which evolved into every other weekend), overnight and one day (Wednesday) of midweek visitation. This order is not apparent in the file, but the parties stipulated at hearing that this is what was ordered on September 30, 1993. The file's order section refers to a transcript not in the file.
Subsequently, the instant motions were filed. A hearing was held on these motions commencing on June 4, 1996.
From the evidence and the court having observed the demeanor of the witnesses, the court finds the following facts. Although the plaintiff asserted that the defendant sexually abused the children throughout the pendente lite period, no examining CT Page 5115-D professional ever determined that sexual abuse of either child occurred. This includes the Yale Sex Abuse Clinic, Dr. Robson of the Institute of Living, and physicians in New Jersey and Florida. The children verbalized such claims; occasionally the mother was present at the times these claims were verbalized. The plaintiff contacted DCF more than once and the Florida version of DCF. No formal action against the defendant was ever taken by any of these agencies. The matter of custody and visitation was referred to Family Relations for evaluation three times. The evaluations were completed in February, 1992, (pendente lite) May, 1994 and March, 1996. All three reports as well as Dr. Robson's pendente lite evaluation were submitted as exhibits before this court, by agreement of the parties. Dr. Robson did not testify; Marie Decker from Family Relations testified. She prepared all three Family Relations reports and performed three evaluations. The 1991 evaluation was performed after Dr. Robson completed his report. None of these evaluations supported the defendant's accusations. All of them, in their recommendations, contemplated a plan of unsupervised visitation by the defendant with the children. Shortly after the last pendente lite report and evaluation were completed, the matter proceeded to judgment on an uncontested basis, providing for unsupervised visitation of the defendant with his children. That was January 7, 1993.
One month later, in February, Mr. Boustead was experiencing problems with the plaintiff cooperating with his court-ordered visitation rights. He attempted to enforce them by contact with the plaintiff through the parties' attorneys. Commencing at least as early as March 26, 1993, not more than two and one-half months after the entry of the decree in this matter, the plaintiff willfully and systematically deprived the defendant of all visitation with the minor children. She made continual excuses putting him off. This was all in preparation by her for moving away from the State of Connecticut with the minor children, without notifying the defendant and without leave of court. On April 16 or 17, 1993, the plaintiff moved to Florida. She never told the plaintiff that she was going, where she was going, or provided any means for the defendant to have contact or communication, directly or through a third party, with her or the minor children. The defendant became aware of the permanent removal of the plaintiff with the children when he went to her house out of frustration of denials of visitation and then no telephone response. From April, 1993 until early September, 1993 the defendant searched for his children, hiring private investigators, searching himself and working with local, state CT Page 5115-E and federal law enforcement authorities. The children were returned to Connecticut by him. The plaintiff was aware that there was a court order for her to return the children to Connecticut from the day after it was granted. Not satisfied with the advice from her former attorney, Morton Dimenstein, the plaintiff contacted Legal Aid in Connecticut for assistance. In correspondence dated June 25, 1993, New Haven Legal Assistance declined her representation but recapped for her the import of the order of Judge Coppeto granting temporary custody to the defendant and ordering the children be returned to Connecticut. The plaintiff tried to suggest that Attorney Dimenstein and this correspondence from New Haven Legal Assistance gave her options, one of which was to remain hidden in Florida. This is a very twisted way to look at the whole affair. Indeed, it was laid out that Ms. Boustead could wait until Mr. Boustead found her. The real choice she consciously opted for, was to remain hidden herself and to hide and secrete the children's whereabouts from their father, and, to violate not one but two orders: the original judgment as well as the order of April 29, 1993. All of this had the entirely foreseeable result of subjecting the children unnecessarily and inevitably to the trauma of being removed abruptly from their environment. Her conduct displayed a wilfulness of contempt of court, a scheming desire to deny the defendant access to the children and ultimately a failure to consider the harmful effects her conduct had on the well-being of her children. Finally on her return she showed no remorse or insight as to the deleterious effects of her behavior. The plaintiff has consistently defended her move as approved by her former attorney. This notion is rejected as any defense to her conduct. Further, after listening to the evidence on this, the court rejects the assertion that such advise was given.
Upon her return to Connecticut (following after the children), the plaintiff filed a motion to modify the judgment indicating, implicitly, that she would be seeking to terminate the parental rights of the defendant, Mr. Boustead. The same motion sought sole legal custody and the right to remove the children to Florida (#159). In that pro se motion she seeks the right to take the children to Florida, ". . . so that they may continue their schooling, counseling and stability of life." The motion goes on to suggest that they cannot stay in Connecticut because they have no home here and no clothes with them. This motion seeks to shift the burden of the very dilemma that the plaintiff herself placed the children in by violating two court orders knowingly and deliberately. The spirit of this motion, as CT Page 5115-F well as its language, is to continue the plan to deprive the children of all contact with their father. Ultimately, the plaintiff did not pursue this motion to hearing, although interim motions dealing with the children were heard.
Then, on May 15, 1995, the plaintiff filed one of the motions before the court today. It was accompanied by an affidavit of the plaintiff. It sought permission to relocate the children to Florida and certain visitation of the defendant with the children.
At trial, the plaintiff testified that the reasons she wanted to relocate with the children to Florida were that: in the four and one-half months that the children lived in Florida they bloomed, that she can buy a house there which she cannot afford to do here, that the children have friends there, enjoy the lifestyle there and the opportunities to do things there. Also, she added that there is a "special guy" in her life who lives in Florida. This gentleman and she are neither married nor was there any testimony that they are engaged to be married. She indicated that the relationship had now endured three years; that he has a daughter. When asked further about her desire to relocate with the children, the plaintiff indicated that she loves the lifestyle in Florida and stated once again that the children really bloomed in Florida and were happier than she had ever seen them. There is apparently, in the area that Ms. Boustead desires to relocate to, a Boys and Girls Club which is very active and apparently enjoyable for the children and very inexpensive.
Since the date of the divorce, Ms. Boustead has made no attempt to put down roots in Connecticut and establish the children in long-term housing or stability in their schooling. She has found only temporary housing, necessitating moving the children several times. She has also, as a result been required to move their schools. At the time of the divorce the family lived in West Haven in the marital home. On her return, during the September, 1993 hearing plaintiff provided no sense that she had any permanent housing. The children lived for a short while in Killingworth, going to the local schools there. (Lest it be misunderstood, this resulted from a temporary placement of the children because Ms. Boustead had no housing and was still seeking to return immediately to Florida.) Thereafter, Ms. Boustead lived in West Haven, putting the children in West Haven Schools. Then she moved to Milford, putting the children in the Milford schools. As of the hearing in this matter, her `academic CT Page 5115-G rental' in Milford expired on June 30, 1996 and the children will be moved again. Rather than establish a life here, she explains that she keeps making temporary arrangements because she expects to be able to relocate the children to Florida. The opportunity to make the best of it here has never been present for the children since the date of divorce. The plaintiff acknowledged that she has spoken with them constantly about moving to Florida. It is no wonder that it has remained a desire of the children's. Its allure has been made clear and a matter of priority to them, by the plaintiff. Since the Fall of 1995 Ms. Boustead has worked steadily at the Cahill and Temple Law Firm. She works 30 hours per week and is allowed to arrange her work hours around her own schedule. She is paid $11 per hour, which would provide a gross of $330 per week or $17,160 per year. In Florida she was earning only at the rate of $15,000 per year, although she hoped for a bonus.
Since being back in Connecticut, these children have visited regularly with their father. Other than a window of time when he previously commuted to Alabama during the week, for which he missed his midweek visitation, he has not been slipshod in his visitation with his children. The children do not visit overnight. In his home there are quite a few pets. Mr. Boustead's present wife is deeply attached to them and will not allow their removal. The child, Laura has asthma. As a result, she has not visited overnight, dating back to 1990. Ultimately, Chris stopped overnight visitation because of the logistical and competition between the children problems of one going back to mother's for the night and the other not. The lack of overnight visitation is not a criteria or indicia of Mr. Boustead's desire to see his children and whether that is a bond that should preserved and promoted between he and his children.
Custodial decisions in Connecticut are guided by the "best interests of the minor child(ren)" standard. "In making or modifying any order with respect to custody or visitation, the court shall . . . be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference. . . ." Connecticut General Statutes § 46b-56. Neither our Supreme nor our Appellate Court has not had the opportunity to consider whether a different standard (or an enhanced standard) applies to custodial and visitation decisions where the physical resident parent seeks the removal of the children from the jurisdiction and, therefore, geographic CT Page 5115-H proximity to the other parent.
The question then becomes does the court consider whether it is in the best interests of the children to move to Florida, or, what, under all the circumstances, is in the best interests of the children? Family Law and Practice, Rutkin, Vol. 2, pp. 32-320, citing to Goldmeier v. Lepselter, 89 Md. App. 301,598 A.2d 482, 483 (1991), Cert. Denied, 325 Md. 249, 600 A.2d 419 (1992). This court finds that to consider the contemplated move in a vacuum would be wrong. This court finds that the removal of the children to Florida, under the existing circumstances of their lives would not be in their best interests. The court does not find that the quality of their lives would significantly improve. If and when Ms. Boustead determines to settle down, all of the opportunities of a stable home life will be available to them in Connecticut. Their lack of stability in Connecticut is a foreseeable and immediate by-product of their mother's choice to remain relatively transient in Connecticut. The children's desire to move to Florida has been fueled and nurtured by their mother. The circumstances of their original removal make any consideration to the fondness they may have developed for a lifestyle there inappropriate. The court finds that ". . . their will be no realistic opportunity for sufficient visitation to preserve" (Ibid at pp. 32-321) Mr. Boustead's relationship with the children if they are allowed to move to Florida with their mother. The court finds that she has no desire to maintain a relationship of the children with their father and that she will not be compliant with court-ordered visitation.
The remaining question before the court is the plaintiff's motion seeking sole custody of the minor children. The court, post-judgment, ordered joint legal custody after the Florida move and return to Connecticut. That decision to modify the custody order was after an order of temporary custody in the defendant had been made to provide for the return of the children. One party here, Mr. Boustead, continues to seek the maintenance of the present joint custody order. Therefore the jurisdictional requirements of Connecticut General Statutes § 46b-56 are satisfied. Tabackman v. Tabackman, 25 Conn. App. 366, 368 (1991). The context of the September, 1993 order of joint custody in this case was to provide the defendant an assurance of a continued bond with his children. This is in the children's best interests. The reasons for that order of joint custody are no less valid today. The motion is denied. CT Page 5115-I
Lynda B. Munro, Judge